UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| PATRICIA R., | Case No.: 21cv1517-MDD |
|---|---|
| Plaintiff, | **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN FAVOR OF PLAINTIFF AND REMANDING TO THE COMMISSIONER**  [ECF NO. 16] |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Patricia R. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's Title II and XVI application for disability insurance benefits and supplemental security income. (ECF No. 1). The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's claim for benefits from October 31, 2014, through the date of the final decision, January 6, 2021. (AR at 21-32). On August 26, 2022, the parties filed a Joint Motion for Judicial Review of the ALJ's decision.

For the reasons expressed herein, the Court grants the Joint Motion for Judicial Review in favor of Plaintiff. The case must be remanded because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. The Court **VACATES** the decision of the Commissioner denying benefits and **REMANDS** the matter to the Commissioner for further administrative action consistent with the findings presented herein.

I.    BACKGROUND

**Procedural History**

Plaintiff applied for Title II Social Security Disability Insurance benefits and subsequent Title XVI Supplemental Security Income benefits on March 28, 2019. (ECF No. 9 at 189-206 [Administrative Record "AR"]). Her application alleged disability beginning October 31, 2014, when she was 41 years old. (*Id.*). These claims were denied initially on June 26, 2019, and again upon reconsideration on January 6, 2020. (*Id.* at 129-36). On March 10, 2020, Plaintiff filed a written request for a *de novo* hearing. (*Id.* at 137-38). ALJ Kevin W. Messer presided over that hearing on November 4, 2020. (*Id.* at 47-72, 159-77).

Plaintiff submitted a written statement before the hearing, and then appeared at the hearing via telephone, represented by her counsel, Don H. Jorgensen and Lisa Mouradian. (*Id.* at 52-65, 277-79). Plaintiff and Vocational Expert Kenneth P. Ferra testified at the hearing. (*Id.* at 21, 49).

On January 6, 2021, ALJ Messer issued an unfavorable decision and found that Plaintiff was not disabled under the Social Security Act. Despite having severe impairments concerning her spine, knee, and asthma, the ALJ found that Plaintiff retained the ability to perform certain specified jobs with

| | |
|---|---|
|1| stated limitations.  (*Id.* at 18-36).  Plaintiff requested the Appeals Council |
|2| review the ALJ's decision on March 2, 2021.  (*Id.* at 183-86).  The Appeals |
|3| Council denied the request for review on June 30, 2021.  (*Id.* at 1-6).  On that |
|4| date, the ALJ's decision became the final decision of the Commissioner.  42 |
|5| U.S.C. § 405(h).  Having exhausted all administrative remedies, Plaintiff |
|6| brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. |
|7| §§ 405(g), 1383(c). |

**II.  DISCUSSION**

**A.  <u>Legal Standard</u>**

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (Under 20 C.F.R. § 404.1520c, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Courts look to "an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.*  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.'  It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*  The Ninth Circuit explains that substantial

evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (citations omitted), *superseded by regulation on other grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id*. "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459. Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id*.

### B. Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, ALJ Messer found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 23). ALJ Messer found at step two that Plaintiff had the following severe impairments: (1) lumbar degenerative disc disease, spinal stenosis and levoscoliosis; (2) right knee degenerative joint disease, and medical meniscus tear; and (3) asthma. (AR at 24). Plaintiff

also had a non-severe impairment of deep vein thrombosis. (*Id.*). He proceeded to consider Plaintiff's impairments at step three of the sequential process.

At step three, the ALJ decided that the Plaintiff's severe impairments did not meet or equal any "listed" impairment from 20 C.F.R. § 404.1520(d), 404.1525-26, 416.920(d), and 416.925-26. (AR at 24).[1] The particular listed impairments considered here included "Disorders of the Spine," listing 1.04, "Major Dysfunction of a Joint," listing 1.02, and "Asthma," listing 3.03. (*Id.* at 24-25). Regarding Plaintiff's spine impairments, the ALJ said that evidence was lacking with respect to: (1) the degree of nerve root compression characterized by pain, loss of motion, motor loss, and sensory or reflex loss; (2) burning and pain calling for changed position more than once every two hours; or (3) the inability to ambulate effectively as described further in listing 1.04. (AR at 25-26).

As to the joint/knee impairment, the ALJ said Plaintiff did not have the required: (1) gross deformity, pain, and stiffness; (2) limits on fine and gross movements; or (3) difficulty ambulating as set forth more specifically in 1.00B2b-1.00B2c. (AR at 24). He also found Plaintiff did not meet the asthma listing requirements because there was no evidence she had three complications resulting in 48 hours of hospitalization within a 12-month period, as required by listing 3.03A-3.03B. (*Id.* at 25).

When a claimant's impairments, or combination of impairments,

---

[1] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

do not meet the criteria of a listed impairment, as was the case here, the ALJ next considers whether she has the residual functional capacity ("RFC"), *i.e.*, the ability to do physical and mental work activities, on a sustained basis despite limitations that exist from her impairments. (AR at 23). Step four then considers whether the claimant is not disabled because she has the RFC to do past relevant work, and step five looks at her ability to do any other work considering her RFC, age, education, and work experience. (*See Id.* [citing relevant regulations]).

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work as a file clerk, and the vocational expert agreed. (AR at 30, 68-69); *see* 20 C.F.R. §§ 404.1565 and 416.965. The ALJ concluded, however, that considering Plaintiff's age, education, work experience and RFC, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR at 31-32). He accepted the testimony of the vocational expert, who said Plaintiff could perform the requirements of Order Clerk (DOT 209.567-014), Retail Account Clerk (DOT 205.367-014), and Call Out Operator (DOT 237.367-014). (AR at 30-31).

In reaching his decision, the ALJ assessed Plaintiff as retaining the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations:

> [Plaintiff can] occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. The claimant can frequently balance, stoop, kneel and crouch but can never crawl. The claimant must avoid concentrated exposure to extreme cold, and to fumes, odors, gases and other pulmonary irritants. The claimant must avoid concentrated exposure hazards such as operational control over moving machinery and unprotected heights.

(AR at 26). The ALJ said that his RFC assessment was based on all the

evidence and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence. (*Id.*). The ALJ also stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (AR at 25). The ALJ, therefore, concluded that Plaintiff was not disabled since her alleged onset date of October 31, 2014, through the date of the decision on January 6, 2021. (*Id.*).

C. **Issue in Dispute**

The issue presented is whether the ALJ properly considered Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ failed to adequately identify "specific, clear and convincing" reasons for rejecting her testimony regarding the severity of her symptoms. (ECF No. 16 at 7-8). Defendant maintains the ALJ afforded Plaintiff's testimony some weight, but properly found and articulated that Plaintiff's subjective statements were not entirely consistent or supported by the objective medical evidence and other evidence of record. (*Id.* at 18).

1. *The Law Concerning a Claimant's Subjective Symptom Testimony*

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1133-34 (S.D. Cal. 2019) (citing *Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "determine[s] credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.") (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity of her . . . . pain").

In assessing a claimant's complaints about pain, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citation omitted).

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling (SSR) 16-3p (S.S.A. Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").[2]

   2.   *The ALJ's Application of the Law to Plaintiff's Testimony*

The ALJ found that the record established that a medically determinable impairment significantly limited Plaintiff's ability to perform basic work activities. (AR at 25). He explained that claimant's impairments could reasonably be expected to cause the alleged symptoms. (*Id*. at 27). This finding meets the threshold with respect to step one.

Next, because there was no finding that Plaintiff was malingering, the ALJ was required to make specific findings stating clear and convincing reasons for rejecting Plaintiff's subjective testimony. *Smolen*, 80 F.3d at

---

[2] Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[ ]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." *See* SSR 16-3p, 2017 WL 5180304, at **1-2, **10-11.

1283-84.  The ALJ first summarized the medical evidence that substantiated Plaintiff's impairments but concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR at 26).

Plaintiff argues that the ALJ's use of such boilerplate justifications fall far short of the clear and convincing standard the ALJ was required to meet in this case.  (ECF No. 16 at 8-9).  The Ninth Circuit discourages the use of summary statements to reject a Plaintiff's subjective testimony regarding pain.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (finding this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why").  The use of that language itself, however, is not reversible error.  *Brown-Hunter*, 806 F.3d at 489.  Instead, the issue upon review is whether the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for giving less weight to the claimant's subjective statements.  SSR 16-3p, 2017 WL 5180304, at *10.

The ALJ provided more than a summary remark rejecting Plaintiff's statements, but failed to identify specific statements that he rejected, and then link the rejection to substantial evidence in the record.  The ALJ was required to clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement.  *Treichler*, 775 F.3d at 1103 (citation omitted); *see also Lambert*, 980 F.3d at 1277 ("[O]ur precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment.").

Here, the ALJ summarized Plaintiff's subjective pain statements and reported limitations as follows: (1) constant back pain that increased with her activity level, (2) lack of pain relief while using remedial medical devices, (3) right knee pain from a torn meniscus with level-ten pain; (4) only thirty minutes of sitting or five minutes for standing before needing to change position, (5) the need to use a walker or wheelchair if an outing lasted more than such time, (6) the inability to carry more than ten pounds, and (7) uncontrolled asthma, including up to six attacks a day. (AR at 26).

The ALJ did not identify which of these statements he was accepting or rejecting (with the exception described below concerning Plaintiff's use of a walker or wheelchair). Instead, he recited various medical reports that supported her symptoms and suffering in association with each impairment. (AR at 26-28). He then explained, however, that medical reports also existed that were inconsistent with Plaintiff's statements and testimony. (*Id*.). He did not specify those reports and connect them to specific statements.

The Court examines the ALJ's explanations for discounting Plaintiff's descriptions of pain and limitations regarding three impairments, *i.e.*, her spine, knee, and asthma, and the medical evidence that he cites as inconsistent with each condition. (AR at 27-28). The Court concludes that a remand is required because the ALJ rejected Plaintiff's testimony without providing clear and convincing evidence in support of his findings. On remand, the ALJ should explain what evidence contradicts what testimony.

Inconsistencies Concerning Plaintiff's Spinal Impairments

The ALJ's rejection of Plaintiff's subjective statements regarding her spinal impairments and disabling back pain is based in part on his finding that several providers indicated that she was in "no distress." (AR at 27 [citing AR at 470, 515, 523, and 565]). The findings of "no distress" fail to

establish clear and convincing evidence for rejecting Plaintiff's testimony of back pain for two reasons: first, several of those no-distress findings occurred in contexts that appear unrelated to medical evidence about Plaintiff's back pain; second, the cited medical reports often contain statements and opinions that are consistent with Plaintiff's testimony and subjective reports of pain.

For example, in a November 10, 2016, preoperative report concerning a recommendation for Plaintiff to undergo back surgery, there is a notation about Plaintiff's "general" physical examination that states she is a "well nourished female in no acute distress who is awake, alert, and oriented. . . ." (AR at 470). That general notation could relate to Plaintiff's mental state, rather than any physical limitation or pain. More importantly, the report also indicates that Plaintiff had "severe back pain as well as both leg pain [and] weakness . . . for almost four years." (AR at 469). And, that Plaintiff had "significant back and leg symptoms despite physical therapy and two epidural injections." (*Id.* at 470-71).

Another example includes a December 2019 consultative examination that Plaintiff had with a doctor of internal medicine, Robert B. Greene, M.D., who stated that Plaintiff's "general" condition shows she "is a well-developed female who is no acute distress." (AR at 515). But that report also describes a "significant decrease" in Plaintiff's range of motion and pain with maneuvering to perform that motion. (*Id.* at 516). Similarly, in May 2020, the "no acute distress" language appears in a report that Plaintiff had "a limping antalgic gate," the inability to perform heel or toe walking, and tenderness to palpation. (AR at 523-24). But the same document reveals that Plaintiff was "in no condition to work" because of "a complicated problem" with "significant instability" in her spine, which "most likely requires surgery." (*Id.*). (AR at 524-25).

The ALJ also rejected Plaintiff's subjective statements about back pain because a March 2020 report indicated she had no midline tenderness to palpitation. (AR at 27, 29 [citing AR at 574]). But that record concerned an emergency room visit Plaintiff had for "lower leg pain-swelling" in connection with right heel and ankle pain. (*Id*.) Plaintiff was not seeking medical help or being examined for back pain. The ALJ recognized that when Plaintiff saw a spine specialist one month before the ER visit, and again two months after the ER visit, the spine specialist documented tender palpation in Plaintiff's back. (AR at 523-24, 529).

The ALJ's additional stated grounds of inconsistency between Plaintiff's testimony of back pain and the medical record includes a summary of the following evidence: (1) a negative straight leg test, (*id*. [citing AR at 347]); (2) evidence of a normal gait at times, (*id*. [citing AR at 470]); (3) Plaintiff's ability to toe and heel walk, (*id*. [citing AR at 408, 474, 548)]); (4) the ability to rise from sitting without difficulty, (*id*. [citing AR at 614]); and (5) an April 2015 normal electromyography, (*id*. [citing AR at 384]). This general summary is insufficient because the ALJ has not connected aspects of this objective evidence with inconsistencies in Plaintiff's testimony. *See Lambert*, 980 F.3d at 1277-78 (ALJ may not rely on general summaries of evidence without sufficient explanation and connection to discounted aspects of testimony to satisfy clear and convincing standard); *see also Herrick v. Comm'r of Soc. Sec.*, No. 1:20-cv-01776-SAB, 2022 WL 1751049, at *9 (E.D. Cal. May 31, 2022) (concluding the ALJ's statements and summary of medical history and testimony did not sufficiently connect specific testimony to medical records) (citations omitted).

A careful review of the ALJ's decision and the cited medical records reveals that the ALJ has not offered clear and convincing reasons for

rejecting Plaintiff's subjective testimony and statements concerning her back impairments. The cited evidence does not sufficiently describe what the ALJ claims, and the Court cannot speculate about the ALJ's conclusion. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.").

<u>Inconsistencies Concerning Plaintiff's Right Knee Impairments</u>

The ALJ describes dozens of medical reports that support Plaintiff's subjective pain statements regarding her knee. (AR at 27-28). Then, in summary fashion, he finds that "other evidence is inconsistent with the claimant's allegations of disabling symptoms" because, "[a]t times, she had a 'good' to full range of motion." (AR at 28). He cites several medical records in support of that decision, but the Court finds those records do not establish clear and convincing evidence to support a finding of inconsistency between the record and Plaintiff's statements regarding knee pain. (*Id.*).

The ALJ's first citation to a "good range of motion" is an August 2015 report that states there is "present pain with range of motion," and that full range of motion is performed "but painful." (AR at 392). The same report notes that Plaintiff "appears to be uncomfortable," and that "pain radiates into the right leg with discomfort across the right L5 . . ." (*Id.*). Another "good range of motion" report is from a December 2019 Internal Medicine Consultation. (AR at 513-18). But that report states that Plaintiff has "significant decrease in her range of motion" in her spine, and that a full range of motion on the right knee results in pain. (AR at 516). The next report concerns an emergency room visit that Plaintiff had for shortness of breath in April 2020, not an evaluation of her knee. (AR at 564). One line in that ER report is a general statement about Plaintiff's musculoskeletal

system that reflected "good range of motion to all extremities." (AR at 565). The focus of that visit is dedicated to evaluating Plaintiff's shortness of breath and is unrelated to any complaints of knee pain. The ALJ's final reference to a good range of motion is a February 2020 visit to the ER for acute chest pain that is similarly unrelated to Plaintiff's knee pain or impairment. (AR at 603).

The records addressing a good range of motion do not provide clear and convincing evidence of an inconsistency between Plaintiff's subjective pain statements and the medical evidence about her knee without some explanation or a specific link between the record and Plaintiff's statements. Many of the cited records appear either unrelated to her knee, or consistent with the subjective statements. An ALJ may not offer a selective summary of the medical evidence to find an inconsistency where none exists. *See Ghanim*, 763 F.3d at 1162.

As written, the ALJ's findings regarding Plaintiff's knee impairment are insufficient because, like the evidence concerning Plaintiff's spine and back pain, the ALJ's findings are based on a selective summary of the medical evidence that support one conclusion, while omitting evidence from the same reports that do not support such a conclusion. *See id.* at 1164 (ALJ may not select items from treatment record without considering them in context of "diagnoses and observations of impairment"); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment").

<u>Inconsistencies Concerning Plaintiff's Asthma Impairment</u>

The ALJ's summary discrediting Plaintiff's subjective statements about asthma is limited to six lines of text, and similarly lacks a specific connection

between the evidence cited and Plaintiff's statements.  The ALJ concludes that Plaintiff suffers from asthma, but that "other evidence" is inconsistent because:  (1) "her respirations were unlabored," during an emergency room visit for a bug bite in August 2020, (AR at 25 [citing AR at 562]); (2) she "did not have wheezes or crackles," during another ER visit (*id.* at 565); and (3) chest x-rays "showed no active cardiopulmonary disease" during that same ER visit, (AR at 25, [citing AR at 565, 571]).  The lack of wheeze or crackles at one ER visit is not clear and convincing evidence of an inconsistency.  Moreover, Plaintiff's ER visit was focused on ruling out a pulmonary embolism or any failure of Plaintiff's anticoagulation treatment on Eliquis, so the ALJ's summary statement fails to adequately support the alleged inconsistency concerning asthma.

<u>Other Suggested Grounds of Inconsistencies Between Plaintiff's Statements and the Medical Evidence</u>

The ALJ identified two additional grounds for rejecting Plaintiff's subjective symptom testimony and statements.  First, the ALJ concluded that Plaintiff appeared to obtain adequate symptom relief with only routine and conservative treatment.  (AR at 30).  The ALJ's cited evidence, however, demonstrates Plaintiff's *inability* to obtain significant relief from her symptoms.  (*See* AR at 25, 27, 28, and 29).  The Commissioner's brief adds that Plaintiff's hearing testimony supports a finding of adequate pain relief as inconsistent with her other statements regarding pain.  (ECF No. 16 at 20 [citing AR at 56-57]).  But there is no evidence that Plaintiff testified she obtained such relief.  Instead, Plaintiff testified in November 2020 that, since 2013, her symptoms had become worse.  (AR at 55).  When asked if her pain comes and goes, she testified "[i]t's constant."  (*Id.*).  The ALJ's report also

concedes that a July 2020 steroid injection resulted in "only short-term relief" of Plaintiff's knee pain.  (AR at 27).

Those reports and Plaintiff's testimony are not clear and convincing evidence of symptom relief because, even if she showed some improvement, there is no evidence that Plaintiff's pain was ever in control.  (AR at 27).  "It is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,' . . . *i.e.*, no longer debilitating."  *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) ("The fact that a claimant experienced a brief period of reprieve following treatment does not support a finding that her pain was controlled. Rather, the ALJ must show that the treatment was capable of providing lasting relief.").

The second and final evidence suggested in support of the ALJ's rejection of Plaintiff's subjective statements is her testimony that she used a walker or wheelchair to ambulate long distances, despite having no prescription for that assistive device.  (AR at 27).  The ALJ adds that one consultative examiner, Dr. Greene, opined in December 2019 that the Plaintiff did not need a cane to ambulate.  (*Id.* [citing AR at 517]).  So here, the ALJ does connect specific evidence to a particular statement Plaintiff made, but Plaintiff's use of an unprescribed wheelchair, walker, or cane is not a convincing reason to discredit her testimony.  *Ragudo*, 411 F. Supp. 3d at 1135 ("Plaintiff's use of an unprescribed cane is not a convincing reason to discredit her testimony.").  That report, therefore, fails to provide clear and convincing evidence for rejecting Plaintiff's subjective statements regarding her need and use of an assistive device.

//
//

## III. CONCLUSION

The ALJ's cited medical reports fail to establish clear and convincing evidence of inconsistencies between the Plaintiff's subjective statements of pain and the record with respect to all three acknowledged impairments. The ALJ's reasoning is not clear or specific and is insufficient for discounting Plaintiff's symptom testimony. Additionally, the ALJ's failure to specifically identify which parts of the Plaintiff's testimony or statements were not credible, and then connect those statements to the record prevents the Court from conducting a meaningful judicial review. *See Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Smolen*, 80 F.3d at 1284 ([a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Rios v. Saul*, No. 19CV704-LL, 2020 WL 71080, at *5 (S.D. Cal. Jan. 7, 2020).

A remand is, therefore, appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."); *see also Trevizo*, 871 F.3d at 682 ("The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.") (citation omitted). The "rare circumstances" that result in a direct award of benefits are not present in this case. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017).

Instead, further administrative proceedings will serve a meaningful purpose so that Plaintiff's testimony may be properly evaluated. On remand, the ALJ: (1) must provide specific reasons for the weight given to the Plaintiff's symptoms; and (2) those reasons must be (a) consistent with and

supported by the evidence cited, and (b) clearly articulated so the Plaintiff and any subsequent reviewer can assess how the adjudicator evaluated the symptoms. *See* SSR 16-3p (the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities. . . .").

**IT IS SO ORDERED.**

Dated:   January 5, 2023

Hon. Mitchell D. Dembin
United States Magistrate Judge